# UNITED STATES DISTRICT COURT

__Middle__ DISTRICT OF __North Carolina__

UNITED STATES OF AMERICA
V.
Aristeo MELGAREJO Lopez
and
Matilde REZA

**CRIMINAL COMPLAINT**

Case Number: 1: 06MJ222

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about __2000 to the present__ in __Randolph and Montgomery__ County, in
(Date)
the __Middle__ District of __North Carolina__ defendant(s) did,

*(Track Statutory Language of Offense)*

knowingly, intentionally and unlawfully conspire, combine, confederate and agree together and with each other to commit offenses against the laws of the United States, that is:
to knowingly, intentionally and unlawfully conspire to distribute in excess of five (5) kilograms of a mixture and substance containing a detectable amount of cocaine HCl, a schedule II controlled substance, within the meaning of Title 21 United States Code Section 812

in violation of Title __21__ United States Code, Section(s) __841 (a) (1) and 846__ .

I further state that I am a(n) __Special Agent__ and that this complaint is based on the
Official Title
following facts:

SEE ATTACH AFFIDAVIT

Continued on the attached sheet and made a part of this complaint: ☒ Yes ☐ No

Signature of Complainant

S/A Bradley T. Dando
Printed Name of Complainant

Sworn to before me and signed in my presence,

August 15, 2006                                       at     Greensboro, North Carolina
Date                                                         City and State

P. Trevor Sharp, U.S Magistrate
Name and Title of Judge                                       Signature of Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

# AFFIDAVIT

BRADLEY T. DANDO, Special Agent (SA) of the Federal Bureau of Investigation (FBI) United States Department of Justice, Greensboro, North Carolina, having been duly sworn, states:

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (FBI). I have been a Special Agent with the FBI since 2002 and am currently assigned to the FBI Charlotte Division, Greensboro Resident Agency. Prior to joining FBI, I was a Special Agent with the Florida Department of Law Enforcement (FDLE) for three (3) years and a Deputy Sheriff for the Polk County, Florida Sheriff's Office for over 3 and one half years. During the time that I have been a law enforcement officer, I have attended numerous schools and been trained in narcotics enforcement and violent crime investigations, by FDLE, DEA, and the FBI. I have written, executed or assisted in the execution of numerous search warrants. Through training and experience gained during narcotics investigations and violent crime investigations, I am familiar with the methods used by narcotics traffickers to conceal the proceeds of their unlawful activities.

2. This affidavit is based upon information obtained from my personal involvement in this investigation as well as information provided to me by other Special Agents and Task Force Office of the FBI, the Drug Enforcement Administration (DEA), and other state and local law enforcement officers. Since this affidavit is being submitted for a

limited purpose, I am not including all the facts and information which I have learned about or obtained during the course of this investigation.

3. On or about July 11, 2006, a confidential informant, hereinafter referred to as CI-1, advised law enforcement agents in Knoxville, Tennessee that he/she could arrange for the delivery of four kilograms of cocaine to Tennessee from North Carolina. CI-1 identified the source of supply for the cocaine to be Tommie Dondi WARNER who resided in North Carolina. CI-1, while being monitored contemporaneously by law enforcement agents, dialed the phone number CI-1 provided for WARNER. During the conversation CI-1 had with WARNER, CI-1 requested four kilograms of cocaine be sent to CI-1 in Knoxville, Tennessee. WARNER agreed to provide CI-1 with the cocaine.

4. A short time later CI-1 received a telephone call from an individual, identified hereinafter as CW-1 (Cooperating Witness). CW-1 was identified by CI-1 as a courier for WARNER who had delivered kilogram quantities of cocaine to CI-1 on behalf of WARNER on four or five previous occasions. CW-1 agreed to deliver the kilograms of cocaine to CI-1 at the Econ-Lodge motel in Knoxville, Tennessee.

5. Later, CW-1 accompanied by another individual, hereinafter identified as CI-2 arrived at the motel in Knoxville, Tennessee. When CW-1 and CI-2 entered the room occupied by CI-1, CW-1 had in his/her possession a bag containing approximately four kilograms of cocaine HCl. Law enforcement placed CW-1 and CI-2 in custody inside the hotel room.

2

Case 1:06-mi-00222-PTS   Document 1   Filed 08/15/06   Page 3 of 10

6. CW-1 was advised of his/her Miranda rights and agreed to speak with law enforcement. CW-1 acknowledged that he/she was sent by WARNER to deliver the four kilograms of cocaine to CI-1. CW-1 was later debriefed and stated that although WARNER coordinates shipments of cocaine from North Carolina to Tennessee, WARNER had a Mexican source of supply (SOS) for the cocaine in North Carolina. CW-1 did not know the actual name of the Mexican source of supply, but stated that CW-1 had met with the Mexican SOS and the Mexican SOS's wife on several occasions to obtain the cocaine and pay the Mexican SOS and Mexican SOS's wife for the cocaine. According to CW-1, the Mexican SOS, who has since been identified as Aristeo MELGAREJO Lopez and the Mexican SOS's wife, who has been identified as Matilde REZA, provided the four kilograms of cocaine that were seized in Tennessee. CW-1 and CI-2 were to deliver the four kilograms of cocaine to CI-1 in Tennessee and return to North Carolina with $85,000 for payment of the cocaine.

7. CW-1 and CI-2 were then provided a receipt by Tennessee Law enforcement showing that the money owed for the four kilograms of cocaine was seized by law enforcement during a traffic stop. This would give the appearance that the four kilograms of cocaine were successfully delivered to CI-1 in Tennessee and that CW-1 and CI-2 were subsequently stopped with the drug proceeds returning to North Carolina. CW-1 and CI-2 then returned to North Carolina where they continued their cooperation with law enforcement.

8. During a subsequent debriefing by law enforcement, CW-1 stated that the cellular telephone number for REZA was (336) 963-6165. According to CW-1, CW-1 would

3

usually contact REZA to arrange the pick up of cocaine or payment of money because of MELGAREJO Lopez' inability to speak English. CW-1 said that shortly after his/her return to North Carolina, MELGAREJO Lopez and REZA came to CW-1's residence and told CW-1 to bring the receipt for the money seized in Tennessee and get in their white pick up truck. CW-1 said he/she was then driven to a location south of Randolph County where they (CW-1, MELGAREJO Lopez and REZA) met with several other Hispanic males. According to CW-1, MELGAREJO Lopez took the receipt showing the money seizure in Tennessee and showed the receipt to the other Hispanic males. After several minutes of conversation between the Hispanic males, MELGAREJO Lopez returned the receipt to CW-1 and CW-1 was driven back to CW-1's residence by MELGAREJO Lopez and REZA.

9. On August 3, 2006, CW-1 placed a recorded telephone call to REZA in an attempt to meet with MELGAREJO Lopez to discuss additional monies owed to MELGAREJO Lopez for cocaine shipments delivered to Tennessee by CW-1. REZA did not answer the call, but called CW-1 back approximately two minutes later. During the recorded conversation, CW-1 told REZA that CW-1 needed to meet with MELGAREJO Lopez and REZA to discuss the money owed. REZA told CW-1 they (MELGAREJO Lopez and REZA) could meet CW-1 around 4:30 P.M. A short time later, CW-1 received another incoming call from REZA. REZA told CW-1 to meet MELGAREJO Lopez and REZA at the Randolph County Mall.

10. At approximately 4:30 P.M., surveillance was established on the parking lot of the mall. At approximately 4:35 P.M., surveillance units observed CW-1 arrive in the

parking lot of the mall and park near the Belk's Department Store Entrance. A few minutes later, the CW-1 received another phone call from REZA asking CW-1 where he/she was parked. Approximately two minutes later, surveillance units observed a Hispanic female, identified by CW-1 as REZA, approach CW-1's vehicle. REZA told CW-1 to get out of the car and walk with her. As CW-1 and REZA walked towards the Belk's entrance they were met by a Hispanic male, identified by CW-1 as MELGAREJO Lopez. Surveillance units observed CW-1, MELGAREJO Lopez and REZA engage in conversation as they walked in front of the entrance to Belk's. Eventually all three parties entered Belk's and remained inside the department store. At approximately 4:47 P.M., CW-1 exited the Belk's Department store and left the parking lot. Surveillance units met with CW-1 at a prearranged meet location and retrieved a recording device from CW-1. CW-1 told law enforcement that during the meeting with MELGAREJO Lopez and REZA, CW-1 requested an additional four kilograms of cocaine to take to a customer in Tennessee and CW-1 would then return with $44,000 of drug money owed to MELGAREJO Lopez and REZA. REZA told CW-1 that they did not want to provide any additional cocaine to CW-1 until they (MELGAREJO Lopez and REZA) were paid for the cocaine they had already provided to WARNER. CW-1 agreed and told REZA he/she would travel to Tennessee and retrieve the money owed to MELGAREJO Lopez and REZA and pay them. CW-1 asked if after the payment was received would CW-1 be able to obtain the additional kilograms to go to Tennessee. REZA stated after the money was received, MELGAREJO Lopez and REZA would allow CW-1

5

to have additional kilograms. The conversation between CW-1, MELGAREJO Lopez and REZA was recorded and portions video taped.

11. On August 7, 2006, law enforcement arrested WARNER on an outstanding federal warrant issued in the Eastern District of Tennessee for conspiracy to distribute cocaine HCl. WARNER has since cooperated with law enforcement and provided the following information. WARNER stated that within the last approximately six (6) years he had obtained, either personally or through co-conspirators, in excess of two hundred (200) kilograms of cocaine from MELGAREJO Lopez and REZA. WARNER added that the cocaine seized in Tennessee from CI-1 was also provided by MELGAREJO Lopez and REZA. WARNER provided directions to MELGAREJO Lopez and REZA's residence which was consistent with the location of the residence CI-2 had previously shown law enforcement. WARNER also identified MELGAREJO Lopez and REZA from North Carolina Drivers Licenses photographs. A check of a public records data base showed both MELGAREJO Lopez and REZA had used the address identified by WARNER and CI-2 as their residence.

12. On August 7, 2006, CW-1 placed a recorded telephone call to REZA. CW-1 told REZA to let MELGAREJO Lopez know CW-1 had traveled to Tennessee and obtained a portion of the money owed to MELGAREJO Lopez for the cocaine. CW-1 told REZA to meet CW-1 at the Randolph County Mall later that day. CW-1 met with law enforcement at a prearranged meet location in Randolph County, North Carolina. CW-1 was provided a bag containing U.S. Currency and then followed by surveillance units to the Randolph County

Mall. CW-1 remained in the parking lot of the mall for over one hour while engaging in sporadic telephone conversations with REZA. Surveillance units observed a Hispanic male talking on a cellular telephone walking around that parking lot. This Hispanic male appeared to be looking for a person or vehicle in the parking lot. The Hispanic male eventually began to walk towards CW-1's vehicle. At approximately the same time, CW-1 was told by REZA, on the telephone, that CW-1 should give the money to the individual that was approaching CW-1's vehicle. At the request of law enforcement CW-1 did not give the money to the Hispanic male and CW-1 left the parking lot. CW-1 and WARNER have both identified a surveillance photograph of the Hispanic male that approached CW-1 in the parking lot to pick up the money for MELGAREJO Lopez and REZA as an individual who has delivered kilogram quantities of cocaine to WARNER and CW-1 on behalf of MELGAREJO Lopez and REZA in the past.

13. On August 14, 2006, Cooperating Witness, hereinafter referred to as, CW-2 placed a recorded telephone call to the residence of MELGAREJO Lopez and REZA. An unidentified Hispanic male answered and told CW-2 that he would have REZA contact CW-2 later. A short time later CW-2 received a telephone call from REZA. During the conversation, CW-2 told REZA he/she needed to meet with REZA and or MELGAREJO Lopez to discuss the arrest of WARNER. REZA instructed CW-2 to meet at a specific location in Randolph County, North Carolina where REZA would then send someone to pick up CW-2. Later that day, CW-2, under the surveillance of law enforcement, arrived at the location given by REZA. Shortly after arriving, CW-2 received a telephone call from a

7

Hispanic male who indicated he was sent to pick up CW-2. The unidentified caller then instructed CW-2 to move from the location he/she was at to another location in Randolph County. CW-2 complied and was followed by surveillance units to a gas station on Highway 64 in Asheboro, North Carolina. Upon his/her arrival, CW-2 received a telephone call from the same Hispanic male that requested him/her to go to the gas station and told CW-2 to walk to the pay phone in the parking lot and await a call. The CW-2 went to the pay phone and immediately received an incoming call from REZA. During the conversation REZA asked CW-2 if he/she was followed or suspected law enforcement was in the area. CW-2 told REZA that WARNER needed additional money to get out of jail on bond. REZA told CW-2, she (REZA) would attempt to provide CW-2 bond money for WARNER. REZA instructed CW-2 to return to the same gas station at 6:00 P.M. on Wednesday, August 16, 2006 at 6:00 P.M. REZA added that she would not be delivering the money to CW-2 but, that REZA would send someone with the money.

14. Based on the foregoing, I have probable cause to believe that MELGAREJO Lopez and REZA did conspire with each other and others to distribute and posses with the intent to distribute in excess of 5 kilograms of a mixture and substance containing a

detectable amount of cocaine HCl, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841 (a) (1) and 846.

*Bradley T. Dando*
Bradley T. Dando, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 15th day of August, 2006.

*P. Trevor Sharp*
P. Trevor Sharp
U.S. Magistrate Judge

9